UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22378-Civ-SEITZ
       (08-20078-Cr-SEITZ)
MAGISTRATE JUDGE P. A. WHITE

JOSE R. TAVERAS,[1]          :

        Movant,             :

v.                          :          **REPORT OF MAGISTRATE**
                                       **JUDGE RECOMMENDING**
UNITED STATES OF AMERICA,    :         **THAT MOTION BE GRANTED**
                                       **FOLLOWING AN EVIDENTIARY HEARING**
        Respondent.          :
_____

Introduction

        This matter is before the Court on the movant, Jose R.
Taveras' motion to vacate, attacking his convictions and sentences
for illegal re-entry following deportation, aggravated identity
theft, and related offenses entered following a jury verdict in
case no. 08-20078-Cr-Seitz.

        This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Cases in the
United States District Courts.

        This Court has reviewed the §2255 motion (Cv-DE#1), as well
as, a motion to file late appeal (Cv-DE#11), the government's
response thereto (Cv-DE#10), the PSI, and the underlying criminal
file.

---

[1]The movant represents his name is being misspelled in the underlying
criminal case, and requests that it be corrected to reflect that his name is
spelled "T-a-v-e-r-a-s".

Construing the movant's arguments liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant asserts:

1.   He was denied effective assistance of counsel, where his lawyer failed to file a requested direct appeal. (Cv-DE#1:3).

2.   Alternatively, he argues that even if no request for a direct appeal was made, he maintains that counsel was ineffective for failing to adequately consult with him regarding the advantages and disadvantages of pursuing a direct appeal. (Cv-DE#1:8).

3.   He was denied effective assistance of counsel, where his lawyer failed to be aware and argue that there was a split in the Circuits regarding the issue of what the government must prove in order to convict a defendant of aggravated identity theft pursuant to 18 U.S.C. §1028A.[2] (Cv-DE#1:8,n.2).

4.   He is actually innocent of identity theft.[3]

After review of the record, it became apparent that an evidentiary hearing was necessary at least with regard to claim one, as listed above. Assistant Federal Public Defender ("AFPD") Tracy Dreispul was appointed to represent the movant, and an evidentiary hearing held on February 11, 2010.

---

[2]According to the movant, counsel should have been aware that the Eleventh Circuit's decision in United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007) was contrary to other circuits, and eventually was overruled by the Supreme Court in United States v. Flores-Figueroa, ___ U.S. ___, 129 S.Ct. 1886 (2009). (Cv-DE#1:8).

[3]Although not specifically raised in these precise terms, construing the case liberally and as argued at the evidentiary hearing, it appears that the movant may have a valid claim as to his actual innocence regarding the identity theft conviction.

<u>Factual and Procedural History</u>

For an appreciation of this case and the claims raised herein, a detailed procedural history of the underlying criminal case is required. The convictions stem from his September 2005 appearance at the United States Department of State, Miami Passport Agency, at which time he executed an application for a U.S. passport, representing himself to be Dino Cabassa. On January 11, 2008, the movant was arrested, and a stipulated order of detention was entered shortly thereafter. (Cr-DE#s2,11).

On January 13, 2008, the movant was charged by Indictment with illegal re-entry following deportation, in violation of 8 U.S.C. §1326(a)-(b)(1) (Count 1), making a false statement in an application for a U.S. passport, in violation of 18 U.S.C. §1542 (Count 2), falsely representing himself as a U.S. citizen, in violation of 18 U.S.C. §911 (Count 3), and aggravated identity theft, in violation of 18 U.S.C. §1028A (Count 4). (Cr-DE#13). The movant proceeded to trial where he was convicted as charged, following a jury verdict. (Cr-DE#46).

Prior to sentencing, the movant filed a statement regarding his acceptance of responsibility, along with a request that his guideline be reduced as to Counts 1, 2, and 3 based on acceptance of responsibility.[4] (Cr-DE#53). The government, however, objected to the reduction, however after hearing argument of the parties, it appears that the court granted the reduction, and the PSI was amended, reducing the movant's guideline offense level by two. (PSI ¶22). The PSI determined the movant's base offense level was 10

---

[4]Specifically, he admitted his biggest mistake was re-entering the United States illegally, recognizing that had he been patient, he could have re-entered the United States legally by using a visa he believed would be waiting for him in the Dominican Republic. (Cr-DE#53).

with a criminal history category II, resulting in a guideline range of 8 to 14 months in prison as to Counts 1, 2, and 3. (PSI ¶¶28,58). However, as to his conviction in Count 4, for violation of 18 U.S.C. §1028A for aggravated identity theft, a consecutive two year term of imprisonment was required pursuant to U.S.S.G. §5G1.2(a). (Id.). Ultimately, the court sentenced the movant to a total term of 33 months in prison, consisting of three concurrent terms of 9 months in prison as to Counts 1, 2, and 3, and a consecutive 24 months in prison as to Count 4. (Cr-DE#61).

The judgment was entered by the Clerk on September 15, 2008. (Cr-DE#61). The judgment of conviction in the underlying criminal case became final at the latest on September 29, 2008, ten days after the entry of judgment, when time expired for filing a notice of appeal.[5] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than September 29, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986).

On July 29, 2009, before filing the instant §2255 motion, the movant filed a pro se motion requesting permission to file a late appeal on the basis that counsel had failed to file a requested direct appeal, as well as, a motion to proceed in forma pauperis on appeal. (Cr-DE#s64-65; Cv-DE#11). The motion was construed in part by the Clerk as a notice of appeal, and was transmitted to the Eleventh Circuit Court of Appeals, who assigned it case no. 09-

---

[5]Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). On December 1, 2002, Fed.R.App.P. 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

13865. (Cr-DE#68). Meanwhile, while the motion to proceed *in forma pauperis* was still pending before this court, the movant also filed the instant timely motion to vacate pursuant to 28 U.S.C. §2255 on August 5, 2009.[6] (Cv-DE#1).

During the pendency of this §2255 proceeding, the movant filed a motion to consolidate the criminal motion to file late appeal with this case. (Cv-DE#11). On September 25, 2009, an order was entered directing that the motion to consolidate be granted to the extent that the criminal motion and supporting memorandum be transferred to the §2255 case. (Cr-DE#98).

Meanwhile, on December 29, 2009, the Eleventh Circuit Court of Appeals entered an order dismissing the appeal because it was not filed within 14 days from the date the judgment was entered. (Cr-DE#101).

### Evidentiary Hearing Claim

7    Turning to the merits of the claims raised in this collateral proceeding, in **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to file a requested direct appeal. (Cv-DE#1:3). In **claim two**, the movant alternatively appears to argue that even if the court were to find that no request for an appeal was made, counsel was nevertheless ineffective for failing to adequately consult with him regarding the advantages and disadvantages of pursuing a direct appeal. (Cv-DE#1:8). The claims were not conclusively refuted by the record, and warranted further evidentiary findings. At the February 11, 2010 evidentiary hearing, testimony was taken from the movant, and

---

[6]See: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

his criminal defense counsel, Orlando Do Campo.

It is clear that a counsel's failure to file a direct appeal after being requested to do so by his client results in a per se constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Roe v. Flores-Ortega, supra at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. Id.; see also, McElroy v. United States, 2007 WL 4393955, *1 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005); Gaston v. United States, 237 Fed.Appx. 495, 497 (11th Cir. 2007); Martin v. United States, 81 F.3d 1083 (11 Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11 Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. Gaston v. United States, 237

Fed.Appx. at 496, <u>citing</u>, <u>Flores-Ortega</u>, 528 U.S. at 483.

At the evidentiary hearing in this case, the movant was unequivocal that he requested on at least one occasion that counsel file a notice of appeal in his case. Specifically as to the issue before this court, the movant explained that approximately one week after imposition of sentence, sometime between September 12, 2009 and September 29, 2009, he was briefly visited by counsel at the local detention center. At that time, he advised counsel he wanted to file a direct appeal in order to challenge the prosecutorial misconduct during rebuttal closing at trial, wherein the government suggested to the jury that the movant was untruthful.[7] According to the movant, counsel advised him that he would look over the case and **"**get back to him**"** on filing the notice.

When asked by the government while this argument was not included in his motion requesting a late appeal, the movant was forthright and candid in explaining that he wanted to include the allegation, but in his haste to file the pleading, it was inadvertently omitted. The movant further explained he also wanted to include, although not as the primary argument, but in a footnote, that he was entitled to vacatur of his conviction for aggravated identity theft in light of the Supreme Court's recent ruling in <u>Figueroa</u>.

The movant further testified that approximately three to four weeks after imposition of sentence, he was once again briefly visited by counsel at the local detention center. During this meeting, however, counsel advised the movant that there were no

---

[7]The movant explained that the prosecution's mis-statements during rebuttal that the movant never had a valid visa waiting for him in the Dominican Republic went unsupported by the evidence and went uncorrected.

7

nonfrivolous grounds for an appeal, and that even if an appeal were pursued, he had a less than 10% change of success. At this juncture, the movant believed his 10-day period had elapsed. The movant was forthright that no discussion was had regarding the advantage or disadvantage to pursuing an appeal. The only explanation provided by counsel was the likelihood of a successful appeal. Based on this advice, the movant believed there was nothing further he could do to perfect an appeal, and that no appeal would be filed as he was out of time to do so.

According to the movant, it was not until he reached his permanent institution of confinement that he learned the Supreme Court had granted certiorari review in the <u>Figueroa</u> case. At that time, he contacted counsel who confirmed that he was familiar with <u>Figueroa</u>. When the Supreme Court decided <u>Figueroa</u> on May 4, 2009, the movant again contacted counsel, and was told by his partner that counsel was on vacation, but that he would be working on his case. When counsel returned a few weeks later, he contacted the movant, advising him that he was a "free man" and was just waiting for the government to release him. The movant maintains he kept in contact with counsel, who eventually advised him that the government was refusing to release him. At that point, the movant recalled counsel advising him that the only way to obtain relief would be for the movant to file a notice of appeal and/or a §2255 motion.

Regarding the movant's appellate rights, Attorney Orlando Do Campo ("DoCampo") testified that he had no specific recollection whether he discussed filing an appeal with the movant immediately after sentence was imposed. In fact, DoCampo also had no specific recollection regarding any discussions of an appeal with the movant. He concedes he did not file a notice within the 10-day

8

appeal period, and at first believed the movant had done so. He testified he also could not recall whether the movant instructed him to file the notice on his behalf.

According to DoCampo, the first time he recalls discussing the fact that no appeal had been filed with the movant was around the time the Figueroa decision was scheduled for oral argument before the Supreme Court. He recalled receiving communication from the movant's wife, and also believes he got a call directly from the movant, at which time he advised the movant that he would send him a copy of the Figueroa decision once it was handed down by the Supreme Court. During this conversation, DoCampo recalled that the movant was very upset with the sentence imposed because it required a two year consecutive term of imprisonment for the aggravated identity theft conviction.[8]

Although DoCampo was forthright that it is his practice to visit a client within the 10-day appeal period to ascertain their desires regarding the pursuit of an appeal, he could not recall doing so in this case. He also could not recall discussing with the movant the advantages or disadvantages of pursuing a direct appeal. In fact, he explained contritely that he is "not perfect" and in the fifteen years he has been practicing, he cannot say he "hasn't made mistakes."

After careful consideration of the testimony of the movant, in the context of this case and close observation of his demeanor, as well as careful attention to and review of the testimony of defense

---

[8]DoCampo also explained that, in his opinion, the government's suggestion that the movant was being untruthful in his belief that he had received a visa from the Dominican Republic was a "cheap shot" because any reasonable person reading the documents would have also believed, as the movant did, that there was a visa waiting for them.

counsel and, taking into account the respective interests of the parties in the outcome of this proceeding, the undersigned finds credible the movant's testimony that he requested on more than occasion that counsel file a direct appeal. The movant's testimony is consistent with the procedural history of the underlying criminal case which reflects that the movant attempted to perfect an appeal by contacting counsel and then filing, albeit untimely, a motion for a late appeal. In fact, given the movant's defense at trial, coupled with the fact that the jury convicted him, this court finds the movant's testimony that he wanted to pursue a direct appeal both consistent and credible. The court finds counsel's admission that he lacked any specific recollection regarding any discussions had with the movant regarding the movant's appellate rights both credible and commendable. In conclusion, the court finds that the movant requested a direct appeal, but that counsel refused and/or failed to do so.

Even if this court were to find that the movant never requested that a direct appeal be filed during the 10-day time required for such filing, the movant would still be entitled to an out-of-time appeal for a separate reason, if the movant was prejudiced by counsel's failure to adequately consult with him regarding his right to a direct appeal. It should be noted, that the brief meetings, as testified to by the movant, and uncontroverted by defense counsel, hardly constitutes adequate consultation.

"[W]here a defendant has not specifically instructed his attorney to file an appeal, we must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" <u>Thompson v. United States</u>, 504 F.3d 1203 (11th Cir. 2007)(<u>quoting</u>

<u>Flores-Ortega</u>, 528 U.S. at 478).[9]

A criminal defense lawyer, however, is not under a *per se* constitutional obligation to consult with his or her client about an appeal. <u>See</u> <u>Otero v. United States</u>, 499 F.3d 1267, 1270 (11th Cir. 2007)(<u>quoting</u>, <u>Flores-Ortega</u>, 528 U.S. at 479). The Supreme Court has rejected such a bright line rule in this context finding it would be "inconsistent with <u>Strickland</u>'s[10] holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" <u>Flores-Ortega</u>, 528 U.S. at 478.

The Supreme Court has explained, however, that **"counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."** <u>Flores-Ortega</u>, 528 U.S. at 480; (emphasis added).

Relying on the Supreme Court's definition of the term "consult," the Eleventh Circuit has held that "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the

---

[9]During closing argument, movant's counsel argued that this case was similar to the Eleventh Circuit's decision in <u>Thompson</u>. However, this court finds <u>Thompson</u> distinguishable. There, the court concluded both that "it cannot be said that no rational defendant would have wanted to appeal, and that Thompson demonstrated an interest in the appeal." <u>Thompson v. United States</u>, 504 F.3d at 1208. Unlike <u>Thompson</u>, here there was an appeal waiver.

[10]<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

merits of such an appeal." <u>Thompson v. United States</u>, 504 F.3d 1203, 1206 (11th Cir. 2007)(<u>citing</u>, <u>Frazer v. South Carolina</u>, 430 F.3d 696, 711 (4th Cir. 2005)); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005). A defendant should be provided with enough information to either "intelligently and knowingly [] assert[] or waive[] his right to an appeal. <u>Thompson v. United States</u>, 504 F.3d 1206. If, however, two of the three elements of adequate consultation are not satisfied, then it is apparent that counsel failed to consult with the movant regarding his appellate rights. <u>Flores-Ortega</u>, 528 U.S. at 478. In this case, as discussed more fully *infra*, no adequate consultation was had.

This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly ... waived some or all appeal rights." <u>See</u> <u>Otero v. United States</u>,[11] 499 F.3d at 1270 (<u>quoting</u> <u>Flores-Ortega</u>, 528 U.S. at 480).

At the evidentiary hearing, the movant was unequivocal that he spoke with counsel briefly on at least two occasions regarding the pursuit of appeal. It is also uncontroverted that one of the meetings occurred during the time to timely file the notice of appeal. The court finds the movant's testimony credible that at the conclusion of this first meeting, counsel advised him that he was going to review the case and get back to the movant regarding the filing of an appeal.

The court further credits the movant's testimony that counsel

---

[11]In <u>Otero</u>, the Eleventh Circuit noted that "[A] criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal," because in "some cases, the Sixth Amendment requires consultation; in others, it does not." <u>Otero v. United States</u>, 499 F.3d at 1270.

appears not to have visited him until the appellate period expired. The court also finds the movant's explanation credible that during that second, brief meeting, which occurred prior to the movant's designation to a permanent institution, the movant believed he could no longer pursue a direct appeal because the time for doing so had expired. The court further finds the movant's testimony believable that he was not advised of the advantages or disadvantages of prosecuting a direct appeal during the two brief meetings with counsel. The court thus finds that the movant was desirous of filing a direct appeal. In fact, the movant's desire for an appeal is further corroborated by the fact that he was unhappy with the prosecution's statement during rebuttal closing, as well as, with the consecutive sentence imposed for his aggravated identity theft conviction. The Court is also persuaded that the movant expressed a desire to appeal, that counsel promised to meet with him to further discuss the issue. However, when counsel finally did so, it was after the appeal period had long expired and only then to advise the movant briefly that the likelihood of success on appeal was unlikely. This court finds that the movant was not properly advised regarding his rights to pursue an appeal, and had he been properly consulted, he would have challenged his convictions on appeal. In conclusion, the court finds that the movant has established deficient performance under Strickland.

Although this Court finds that counsel was deficient in that he failed to fulfill his duty to consult with the movant regarding the advantages and disadvantages of pursuing an appeal, the Court must nevertheless determine whether the movant suffered prejudice under Strickland. In order to establish prejudice, the court must determine whether but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland v.

Washington, 466 U.S. 668, 688, 694 (1984); Hill v. Lockhart, 474 U.S. 52, 56-59 (1985); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992). See also Rompilla v. Beard, 545 U.S. 374, 380 (2005); Wiggins v. Smith, 539 U.S. 510, 521 (2003); Williams v. Taylor, 529 U.S. 362 (2000). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The movant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687. A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. The same deficient performance and prejudice standards apply to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.

As discussed in this Report, the Court finds that a reasonable defendant in the movant's position would have desired pursuing an appeal. The court further finds that the failure to do so prejudiced the movant. This is so, especially in light of the Supreme Court's decision in Figueroa which directly impacts the movant's conviction as to Count 4. Had counsel filed the direct appeal and raised the issue on appeal, it is evident that the appellate court, or the Supreme Court on certiorari review, would have vacated the movant's conviction and sentence as to Count 4. Thus, the movant has established prejudice and is entitled to

relief.

Remaining Claims

Normally, the remaining claims challenging the lawfulnes of his conviction and sentence should be dismissed without prejudice to the filing of a §2255 motion once the movant convictions become final after resolution of his direct appeal. See McIver v. United States, 307 F.3d 1327, 1332, fn2 (11th Cir. 2002).[12] This is true because an order granting a §2255 petition, and reimposing the same sentence, "resets to zero the counter of collateral attacks pursued," and therefore "does not render subsequent collateral proceedings second or successive." McIver v. U.S., 307 F.3d 1327, 1332 (11th Cir. 2002)(citations omitted).

---

[12]In McIver, the Eleventh Circuit reasoned that dismissal was appropriate because:

> [T]here are significant inefficiencies to any other approach. If the district court were to deny a collateral claim under a different standard of review than applies on direct appeal, then the defendant might be entitled to relitigate the same claim in his reinstated direct appeal. Moreover, both the government and the petitioner could pursue collateral appellate proceedings on other claims that the outcome of the direct appeal might render unnecessary. Although in Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), we instructed district courts to resolve all claims in petitions brought pursuant to 28 U.S.C. § 2254, equally clear precedent of this Court directs that collateral claims should not be entertained while a direct appeal is pending. See Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (binding authority in the Eleventh Circuit under Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)); see also Rules Governing 2255 Proceedings, Rule 5, advisory committee note; United States v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); United States v. Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980); United States v. Davis, 604 F.2d 474, 484 (7th Cir. 1979); Jack v. United States, 435 F.2d 317, 318 (9th Cir. 1970); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); Masters v. Eide, 353 F.2d 517 (8th Cir.1965). Once the court has determined that the petitioner is entitled to a direct appeal, such an appeal is "pending" for all relevant policy purposes. Id

15

However, for purposes of judicial economy it should be noted that in light of the Supreme Court's decision in <u>Flores-Figueroa v. Unites States</u>, __ U.S. __, 129 S.Ct. 1886 (2009), the movant is entitled to vacatur of his conviction for aggravated identity theft.

While the Supreme Court is the only authority capable of creating a new right, for a first §2255 motion, even a district court may determine retroactive applicability. <u>See</u> <u>Dodd v. United States</u>,[13] 365 F.3d 1273, 1280-81 (11th Cir. 2004), <u>citing</u>, <u>Garcia v. United States</u>, 278 F.3d 1210, 1213 n. 4 (11th Cir.). <u>cert. den'd</u>, 537 U.S. 895 (2002); <u>see also</u> <u>United States v. Swinton</u>, 333 F.3d 481, 487 (3d Cir.)("We conclude-and the parties agree-that the statute of limitations provision of § 2255 allows district courts and courts of appeals to make retroactivity decisions."), <u>cert. den'd</u>, 540 U.S. 977 (2003).

As explained below, the undersigned finds that the new rule asserted in <u>Figueroa</u> is retroactively applicable to cases on collateral review. Under <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989) (plurality opinion), "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" <u>Whorton v. Bockting</u>, 549 U.S. 406, 416 (2007). The Supreme Court has identified two categories of "substantive" rules: "decisions that narrow the scope of a criminal statute by interpreting its terms," and "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power

_____

[13]In addition to holding that district courts may determine retroactivity, the Eleventh Circuit in <u>Dodd</u> also set forth its reasoning in detail regarding when the statute of limitations begins to run under 28 U.S.C. § 2255(f)(3).

to punish." <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-52 & n.4 (2004). An example of the first type of substantive rule is the holding of <u>Bailey v. United States</u>, 516 U.S. 137 (1995), that a conviction for "use" of a firearm under 18 U.S.C. § 924(c) requires proof of the defendant's "active employment of the firearm." <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 620-21 (1998). An example of the second type of substantive rule is the rule adopted in <u>Atkins v. Virginia</u>, 536 U.S. 304, 321 (2002), that "the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender."

In <u>Flores-Figueroa</u>, the Supreme Court construed the knowledge element of the aggravated identity theft statute, 18 U.S.C. §1028A.[14] The Court held that in order to establish a violation of §1028A, the government must show that the defendant knew that the means of identification which was used by the defendant belonged to another person. <u>Figueroa</u>, 129 S.Ct. at 1888, 1894. In other words, mere proof that the means of identification used by a defendant, such as a social security number or resident alien card, was assigned to an actual person is in itself insufficient to establish a violation of §1028A. Moreover, the Supreme Court further found that the term "knowingly" in §1028A(a)(1) applies to each of the subsequent elements of the statute as a matter of ordinary English usage. <u>Id</u>. at 1890-94.

It is evident that the Supreme Court's ruling thus constitutes a narrowing of the statute as previously construed by the Eleventh Circuit's decision in <u>United States v. Hurtado</u>, 508 F.3d 603 (11th Cir. 2007). Thus, <u>Figueroa</u> applies retroactively to cases on

---

[14]Section 1028A provides a mandatory term of two years in prison for a defendant who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. §1028A.

collateral review. See Bousley, 523 U.S. at 620-21. Although the
Figueroa claim could have been, but was not raised on appeal, the
movant can have the claim considered on collateral review if he can
demonstrate cause for the failure to raise the claim earlier, as
well as actual prejudice resulting from the alleged error. See
United States v. Frady, 456 U.S. 152 (1982). The cause and
prejudice standard requires the movant to show not only that "some
objective factor external to the defense" impeded his efforts to
raise the issue earlier, Coleman v. Thompson, 501 U.S. 722, 753
(1992), but also that the error he alleged "worked to his actual
and substantial disadvantage." Frady, 456 U.S. at 170.

Here, the movant meets Bousley's actual innocence exception to
the Frady procedural bar rule. In Bousley, the Supreme Court
extended the actual exception to the procedural bar rule to cases
where the defendant had pled guilty but a post-conviction change in
the law potentially shows the conviction and punishment are for an
act that the law does not make criminal.[15] The movant in Bousley had
pled guilty to an offense under the "use" prong of 18 U.S.C.
§924(c) prior to the Supreme Court's decision in Bailey v. United
States, 516 U.S. 137 (1995), which significantly narrowed the
meaning of "use" under § 924(c). Bousley did not challenge his

_____

[15]"Actual innocence is not itself a substantive claim, but rather serves
only to lift the procedural bar caused by [movant's] failure timely to file his
§2255 motion." See United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005)
(attacking conviction based on guilty plea). But see House v. Bell, 547 U.S. 518,
555 (2006) (declining to reach issue of whether free-standing actual innocence
claim is possible where post-trial new DNA evidence in capital case met stringent
showing required by actual innocence exception to procedural default rule);
Herrera v. Collins, 506 U.S. 390, 417 (1993) (assuming for sake of argument that
in a capital case a showing of actual innocence after trial would render the
execution of a defendant unconstitutional, and warrant federal habeas review if
no state avenue of relief was open to him); Mize v. Hall, 532 F.3d 1184, 1196,
1198 (11th Cir. 2008)(petitioner sentenced to death failed post-trial to
establish actual innocence exception to procedural default doctrine and a
fortiori could not establish "a freestanding actual innocence claim (if such a
claim in fact exists).").

§924(c) conviction on appeal and instead filed a §2255 motion, relying on <u>Bailey</u>, arguing that his guilty plea was not knowing and voluntary because neither he, his attorney, nor the court correctly understood the essential elements of the crime with which he was charged and pled guilty to. The Supreme Court held that Bousley's <u>Bailey</u> challenge was procedurally barred under <u>Frady</u> because he had not raised this argument on direct appeal. <u>Bousley</u>, 523 U.S. at 621-23. The Court further held, however, that Bousley's claim could still be reviewed if he could establish that constitutional error in his plea colloquy had probably resulted in the conviction of one who is actually innocent.

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley</u>, 523 U.S. at 623 (<u>quoting</u> <u>Schlup v Delo</u>, 513 U.S. 298, 327-28 (1995)). The Court clarified that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623. The Court concluded, "[I]f, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits." <u>Id.</u> at 624.

In this case, independent review of the trial transcripts reveals that the government provided no evidence, nor did it establish, that the movant knew the identity used belonged to an actual person. Thus, as correctly determined by the Supreme Court in <u>Figueroa</u> the conviction for aggravated identity theft pursuant to §1028A can no longer stand. Thus, the movant is entitled to vacatur of his conviction and sentence as to Count 4.

As to procedural default, the movant has established cause and prejudice for the default because he was under the mistaken belief

that a direct appeal would be prosecuted. Even if that belief was error, as previously determined by the Court, had counsel adequately consulted with the movant, a reasonable defendant in the movant's position would have desired to appeal this conviction and sentence, thereby insuring that his case remained in the pipeline for relief pursuant to <u>Figueroa</u>.

Under the totality of the circumstances present here, the movant has clearly established that he is entitled to relief under §2255 for numerous reasons, and therefore vacatur of his judgment is warranted and a new sentencing hearing recommended. First, <u>Figueroa</u> applies retroactively to this case on collateral review such that the movant's prior conviction for aggravated identity theft must be vacated. Second, the movant's motion has establish cause and prejudice, as well as actual innocence to excuse the bar to his <u>Figueroa</u> claim. Finally, the movant is entitled to a direct appeal.

<u>Remedy</u>

The Eleventh Circuit has held, however, that when an out-of-time appeal is granted in a criminal case as a remedy in a §2255 proceeding, the remedy should be effected by (1) vacating the criminal judgment; (2) reimposing the same sentence; (3) upon reimposition of that sentence, advising the defendant of all of his rights associated with a criminal appeal; and, (4) advising the defendant that the time for filing the notice of appeal from the re-imposed sentence is 10 days. <u>See</u> <u>United States v. Phillips</u>, 225 F.3d 1198, 1201 (11th Cir. 2000).

The facts and remedy in <u>Phillips</u>, however, are distinguishable from the facts in the present case. In <u>Phillips</u>, the petitioner

sought relief on the ground that he was not informed of his right to appeal *in forma pauperis*. Id. at 1199. Phillips contended he wanted to appeal challenge the court's miscalculation of his sentence, but was denied the right to do so. Id. Unlike Phillips, the movant in the present case claims that his attorney provided ineffective assistance by failing to consult with him regarding an appeal. He additionally raises a Figueroa actual innocence argument that the law has changed regarding the element of proof to sustain a §1028A conviction. Due to this change in the law pursuant to Figueroa, the movant's conviction and sentence for aggravated identity theft was imposed in violation of the laws of the United States.

<u>Conclusion</u>

It is therefore recommended that: (1) this motion to vacate be granted as to the claims raised herein; (2) that his conviction as to Count 4 for aggravated identity theft be vacated in conformity with the holding in Figueroa; and, (3) that the movant be permitted to file a direct appeal following resentencing. Alternatively, the court may vacate the judgment, impose the same sentence, and permit the movant an out-of-time appeal wherein he can then challenge the lawfulness of his conviction as to Count 4 on direct appeal.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this _16ᵗʰ date of February, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Tracy Dreispul, AFPD
      Attorney for Movant
      Federal Public Defender's Office
      150 W. Flagler Street, Suite 1500
      Miami, FL 33130-1555
      Phone: 305/536-6900
      Fax: 305/530-7120

      Dwayne E. Williams, AUSA
      U.S. Attorney's Office
      99 N.E. 4th Street
      Miami, FL 33132
      Phone: 305/961-9163
      Fax: 305/536-7213
```